IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSEPH FLORES,

       Plaintiff,

v.                                              No. CIV 07-1306 RB/LAM

C/O M. DELEVARQEZ,
SGT. CARRY,

       Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

### PROPOSED FINDINGS

**THIS MATTER** is before the Court on *Defendants' Motion to Dismiss* (Doc. 25) (hereinafter "*Motion to Dismiss*"), *Defendant[s'] Memorandum in Support of Motion to Dismiss (Doc. 25-2)* (hereinafter "*Memorandum in Support*"), and *Defendants' Martinez Report (Doc. 24)* (hereinafter "*Martinez Report*"), all filed on March 30, 2009.[2]  On February 27, 2009, the Court ordered Defendants to file a *Martinez* report pursuant to *Martinez v. Aaron*, 570 F.2d 317, 319-320 (10th Cir. 1978).  *See* *Order to File a* **Martinez** *Report and Setting Deadlines for Dispositive*

---

[1]Within ten (10) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition.  A party must file any objections with the Clerk of the United States District Court within the ten-day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.  Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within ten (10) days after being served with a copy of the objections.

[2]The Court notes that Defendant Carry is the only defendant who has been served in this case, and yet he asks the Court to dismiss Plaintiff's claims "against all remaining Defendants with prejudice."  *See* *Motion to Dismiss (Doc. 25)* at 1 (unless otherwise noted, all references so designated are to the electronic page numbers listed in the PDF header at the top of each document in the CM-ECF docket).  As further explained below, because the Court recommends that Plaintiff's claims should be dismissed with respect to all Defendants, not just Defendant Carry, the Court will refer to "Defendants" in these proposed findings unless otherwise indicated.

*Motions (Doc. 23).*  Plaintiff responded to the ***Martinez Report*** on April 29, 2009 (*see **Response***

***to Defendants['] Martinez Report** (Doc. 30)* (hereinafter "***Response***")), and on April 30, 2009,

Defendants filed their ***Reply to Plaintiff's Response to** **Martinez Report Filed [sic]** (Doc. 31)*

(hereinafter "***Reply***").[3]  In addition, Plaintiff filed what appear to be two supplements to his ***Civil***

***Rights Complaint Pursuant to 42 U.S.C. § 1983** (Doc. 1).  See Docs. 9* and *26*.  On April 23, 2009,

Defendants filed a response to *Doc. 26*.  *See **Defendants['] Response to Supplement Filed [sic]***

*(Doc. 29).*

       This case was referred to the undersigned United States Magistrate Judge on January 3, 2008,

to submit proposed findings of fact and recommendation for the disposition of this case pursuant to

28 U.S.C. §636(b)(1)(B).  *See **Order of Reference** (Doc. 4).*  For the reasons set forth below, the

undersigned recommends that ***Defendants' Motion to Dismiss** (Doc. 25)* be **GRANTED** and that

all of Plaintiff's claims and this case be **DISMISSED without prejudice**.  In deciding this matter,

the Court has considered the parties' submissions, the record of this case, and relevant law.

---

[3]The Court notes that Plaintiff filed his ***Response** (Doc. 30)* 13 days after the Court-imposed deadline for Plaintiff to file responses to the ***Martinez Report** (Doc. 25)* and to Defendants' dispositive motions.  *See **Order to File a** **Martinez** **Report and Setting Deadlines for Dispositive Motions** (Doc. 23)* at 5 ("Plaintiff shall file and serve his response to the *Martinez* report and his separate responses to Defendants' dispositive motions **on or before April 16, 2009**." (emphasis in original)).  In his ***Response** (Doc. 30)*, Plaintiff states that he filed it past the deadline because Defendants did not serve the ***Martinez Report** (Doc. 25)* on Plaintiff until April 6, 2009 - seven days after the Court ordered it to be served on Plaintiff.  *See **Response** (Doc. 30)* at 1-2.  The Court further notes that while Defendants filed their ***Reply** (Doc. 31)* on April 30, 2009, they only refer to two documents filed by Plaintiff, *Documents 26* and *29*, and do not appear to address Plaintiff's ***Response** (Doc. 30)*, even though it was filed the day before the ***Response*** was filed.
       The Court finds that Defendants complied with the deadline to serve the ***Martinez Report*** because they *served* the document on Plaintiff on March 30, 2009 (*see **Martinez Report** (Doc. 24)* at 5), and service does not require actual receipt by Plaintiff.  *See* Fed. R. Civ. P. 5(b)(2)(C) ("A paper is served under this rule by: . . . mailing it to the person's last known address -- in which event service is complete upon mailing.").  Nevertheless, in the interest of justice, the Court will consider Plaintiff's ***Response*** and, because the ***Response*** does not alter the findings of the Court, will not order Defendants to file a supplemental reply.

2

*Background*

Plaintiff is a prisoner who is proceeding *in forma pauperis*.  *See **Order Granting Leave to Proceed Pursuant to 28 U.S.C. § 1915(b) and to Cure Defects** (Doc. 5)* at 1.  He filed this action on December 27, 2007, pursuant to 42 U.S.C. § 1983, against "C.N.M.C.F. -- Wardens Security," "C/O M. Delevarqez," and "Sgt. Carry."  *See **Civil Rights Complaint Pursuant to 42 U.S.C. § 1983** (Doc. 1)* at 1 (hereinafter "***Complaint***"); *see also Doc. 26* at 2-3.[4]  In his complaint, Plaintiff alleges that his rights under the Eighth Amendment to the United States Constitution were violated on September 11, 2007, when a correctional officer entered his cell and assaulted him.  *See **Complaint (Doc. 1)** at 4-6.*  In addition, Plaintiff alleges that he has "again been retaliated against by the D.O.C. of New Mexico" by being transferred to different facilities, being threatened by a property officer, having his legal documents and books kept from him or thrown away, and being "ass[a]ulted by a continued [sic] growing list of enemies."  *Doc. 9* at 1-2.

On September 8, 2008, the Court *sua sponte* dismissed Plaintiff's claims against Defendant C.N.M.C.F. -- Wardens Security and directed the Clerk of the Court to issue notice and waiver of service forms for Defendants Delevarqez and Carry.  *See **Memorandum Opinion and Order** (Doc. 14)* at 3.  On October 31, 2008, the State of New Mexico Corrections Department (hereinafter "Corrections Department") notified the Court that the Corrections Department has no employee by the name of "Melvin Delevarqez."  *See **Letter From Department of Corrections** (Doc. 16).*  The letter states that the Corrections Department has a current employee named "Melvin DeVargas, Sr." and a former employee named "Melvin DeVargas, Jr." but the Corrections Department would not waive or accept service for Melvin Delevarqez "because the plaintiff does not adequately identify

---

[4]In *Doc. 26*, Plaintiff makes claims against "Melvin DeVargas, Sr."

3

the defendant." *Id.* On December 9, 2008, the Court ordered Plaintiff to "specifically identify the party named in the complaint as C/O M. Delevarqez." *See* ***Order to Show Cause (Doc. 20)*** at 1. Plaintiff responded on December 16, 2008, that he "ha[s] no way to get the correct name be it Delevarqez or DeVargas[,] Sr." *See Doc. 21* at 4. On February 27, 2009, the Court ordered Defendant Carry "to prepare a *Martinez* report to assist the Court in effecting service on Defendant Delevarqez and in evaluating Plaintiff's claims." *See* ***Order to File a* Martinez *Report and Setting Deadlines for Dispositive Motions (Doc. 23)*** at 2.

As part of the ***Martinez Report (Doc. 24)***, Defendant Carry provided to the Court an affidavit of Mike Sanchez *(Doc. 24*, Exhibit 2 at 10-11), attached to which is the investigative report generated on September 14, 2007, which notes that Correctional Officer "Melvin DeVargas" was investigated for an alleged excessive use of force against Plaintiff on September 11, 2007. Neither the affidavit nor the investigative report identify Mr. DeVargas as either "Jr." or "Sr." *See* ***Martinez Report (Doc. 24)*** Exhibit 2A at 12-13. The ***Martinez Report (Doc. 24)*** further states that there are no other documents surrounding the incident that would provide additional information to determine the identity of "M. Delevarqez." *Id.* at 2-3. On April 9, 2009, Plaintiff filed *Doc. 26*, wherein he states that "Sergeant Lozano from C.N.M.C.F. Los Lunas visited [Plaintiff] on 4-4-09 to tell him in person that the correct name of the ass[a]ulting correction's [sic] officer that ass[a]ulted [Plaintiff] is Melvin DeVargas Sr." *Doc. 26* at 1. Neither of the documents filed by Defendant Carry after Plaintiff filed *Doc. 26* respond to Plaintiff's identification of "M. Delevarqez" as "Melvin DeVargas, Sr." *See* ***Defendants' Response to Supplement Filed [sic] (Doc. 29)*** and ***Reply (Doc. 31)***.

4

### *Defendants' Motion to Dismiss*

Defendants' ***Motion to Dismiss*** *(Doc. 25)* asks the "Court to dismiss Plaintiff's entire Compliant against all remaining Defendants with prejudice." *Doc. 25* at 1.  Defendants contend that Plaintiff's claims should be dismissed because: (1) Plaintiff has failed to exhaust all administrative remedies for his claims (*see* ***Memorandum in Support*** *(Doc. 25-2)* at 2-4), and (2) Plaintiff has failed to state a claim under Rule 12(b)(6) (*id.* at 4-6).  To support their claim that Plaintiff failed to exhaust administrative remedies, Defendants state that Plaintiff has only filed "four grievances on record," that only three of those grievances were "fully pursued," and that "none of those filed grievances were for an alleged use of excessive force by any correctional officers."  *Id.* at 2.  Defendants note that "Plaintiff states in his complaint that he states that he did file a grievance in this matter" but that "a review of all of the grievances filed to the exhaustion point do not include any such item." *Id.* at 4 (citing ***Complaint*** *(Doc. 1)* at 5).  In support of their claim that Plaintiff fails to state a claim under Rule 12(b)(6), Defendants state that Plaintiff fails to allege or provide support for his claim that Defendant Carry violated his constitutional rights, and that an investigation conducted after the alleged incident "found no evidence that any type of altercation occurred in Plaintiff's cell on the date the excessive use of force was alleged to have occurred."***Memorandum in Support*** *(Doc. 25-2)* at 5.  In addition, Defendants state that Plaintiff failed to allege any actual injury suffered by Plaintiff at the time of the incident.  *Id.* at 6.  Finally, Defendants briefly raise the following defenses: that "the Eleventh Amendment bars the suit as to Defendant [Carry] in his official capacity;" that Defendants are immune from the claims under the New Mexico Tort Claims Act; that "Plaintiff has failed to comply with the New Mexico Tort Claims Act," including failure to meet the notice requirements under N.M.S.A. § 41-4-16 (1978); that "Plaintiff lacks standing to bring this lawsuit as he has not suffered any cognizable legal harm;" and that "Plaintiff is not

5

entitled to sue for compensatory damages" because his claim that he suffered a physical injury "is contradicted by the report of the investigation conducted immediately after the alleged indicent." *Id.* at 6-7.

In his **Response** *(Doc. 30)*, Plaintiff restates his claims and contends that he exhausted his administrative remedies.  Plaintiff attaches copies of eleven informal grievances.  *See **Response** (Doc. 30)* at 11-40.  Attached as Exhibit A is an "Inmate Informal Complaint" dated September 11, 2007, signed by Plaintiff and containing allegations of an assault on Plaintiff that day.  *Id.* at 12-13. Plaintiff states that "[t]his is the main informal complaint turned in by [Plaintiff] to the grievance officer" and that "[t]his grievance was under [Plaintiff's] door when [he] woke up the next morning."  *Id.* at 10.

### Legal Standards Under Rule 12(b)(6) and Rule 56

In ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts the factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *See Liebson v. N. M. Corr. Dep't*, 73 F.3d 274, 275 (10th Cir. 1996).  The Court determines "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk,* L.L.C., 493 F.3d at 1177 (emphasis in original).

In resolving the exhaustion defense, the Court may convert a motion to dismiss to one for summary judgment.  *See Whitesel v. Sengenberger*, 222 F.3d 861, 866 (10th Cir.2000) (explaining

6

that if the defendant files a motion to dismiss requiring consideration of additional factual material, the court should convert the motion to one for summary judgment).  Here, the parties refer to attachments outside the pleadings, including prison policy and procedures regarding "informal complaints," grievances, and exhaustion of administrative remedies.  Thus, the Court converts Defendants' **Motion to Dismiss** to a motion for summary judgment.[5]

Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Because Plaintiff proceeds *pro se*, the Court must review his pleadings liberally and hold them to less stringent standards than formal pleadings drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520, *reh'g denied*, 405 U.S. 948 (1972).  This means that "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, this does not mean that the Court "assume[s] the role of advocate for the pro se litigant."  *Id.*

---

[5]Typically, when a court converts a motion to dismiss into a motion for summary judgment, it "must give the parties notice of the changed status of the motion and thereby provide the parties to the proceeding the opportunity to present to the court all material made pertinent to such motion."  *Whitesel*, 222 F.3d at 866 (quotation and citation omitted).  In the Court's ***Order to File a* Martinez *Report and Setting Deadlines for Dispositive Motions* (Doc. 23)** at 5, the Court gave the parties "**NOTICE that the** *Martinez* **report may be used in deciding whether to grant summary judgment on Plaintiff's claims, whether by motion or** *sua sponte*," and instructed the parties to "**submit whatever materials they consider relevant to Plaintiff's claims in their submissions related to the** *Martinez* **report including, but not limited to, any counter-affidavits or other responsive material.**"  In addition to this notice, Plaintiff filed a response to the ***Martinez* Report**, attaching documents in which he attempts to dispute the allegations in Defendants' ***Motion to Dismiss*** and ***Martinez* Report**, whereby Plaintiff clearly had the opportunity to introduce evidence pertinent to Defendants' motion and, in fact, did so.

*Exhaustion of Administrative Remedies*

Under 42 U.S.C. § 1997e(a) of the Prisoner Litigation Reform Act of 1995 ("PLRA"), a prison inmate is required to complete the prison administrative process before suing over prison conditions. *See Booth v. Churner*, 532 U.S. 731, 733-34 (2001). Congress has eliminated both the discretion to dispense with administrative exhaustion and the condition that administrative exhaustion be plain, speedy, and effective. *Id.* at 739-41. Even where the available remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available. *Id.* at 741. Moreover, claims must be fully exhausted through all of the required steps of a prison grievance procedure. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies.") (citation omitted); *see also Starks v. Lewis*, No. 08-6137, 313 Fed. Appx. 163, 165-66, 2009 WL 427108 (10th Cir. Feb. 23, 2009) (unpublished).

The undisputed evidence before the Court is that the Corrections Department had a multi-step grievance procedure (CD-150501) pursuant to Policy CD-150500 (*see **Martinez Report** (Doc. 24)* Exhibit 3A at 16-23) in place when Plaintiff was incarcerated, which required an inmate to do the following: (1) file an "Inmate Informal Complaint" (form CD-150501.3) within five calendar days from the date of the complaint; (2) if the informal complaint does not resolve the complaint, the inmate may file an "Inmate Grievance" (form CD-150501.1) within 20 calendar days of the date of the complaint; (3) if the inmate files an "Inmate Grievance," the Grievance Officer shall notify the grievant of receipt of the grievance on an "Inmate 2-Day Notice of Receipt of Formal Grievance" (form CD-1505001.2), or will notify the grievant in writing as to the date the grievance was received and the status of the grievance; (4) the Grievance Officer will review all

8

grievances for "proper time limits and necessary information," and will conduct an investigation and complete the Grievance Officer's report portion of the "Inmate Grievance Form;" (5) the investigation by the Grievance Officer and the Grievance Officer's "report and recommendation will be completed and delivered to the Warden for review within 20 working days of receipt of the inmate's grievance with a copy to the inmate;" (6) "[t]he Warden will review the grievance, along with any comments from inmates and staff, and make a decision within 15 working days of receipt of the grievance;" and (7) if the inmate is not satisfied with the Warden's decision regarding the grievance, "the inmate may appeal that decision to the Office of the Secretary of Corrections within seven calendar days of" the date of receipt of the warden's decision. *Martinez Report (Doc. 24)* Exhibit 3A at 24-27. The policy regarding inmate grievances defines "Exhaustion of Administrative Remedies" as "[t]he completion of the grievance process through the Department level appeal." *Id.* Exhibit 3A at 17. Further, the policy explains that "[e]xpiration of a time limit at any stage without a decision will not be deemed a denial of the grievance and will entitle the grievant to move on to the next level for review." *Id.* Exhibit 3A at 22.

Plaintiff states that he "filed the proper grievance forms to the grievance officer as required," and that "so far no response [has been] given." *Complaint (Doc. 1)* at 24. In *Document 26*, Plaintiff states that he "put in grievance form[]s for this incident as per policy CD-150500," that "the grievances went unanswered and ignored," and that 90 days after filing his grievance, Plaintiff filed this lawsuit. *Doc. 26* at 6-7. He also states that he "was cut off from any and all request[s] to further pursue the matter." *Id.* at 7. Finally, in his *Response (Doc. 30)*, Plaintiff attaches an "Informal Complaint" (form CD-150501.3) dated September 11, 2007, which is signed by Plaintiff and contains allegations of an assault on Plaintiff that day. *Response (Doc. 30)* at 12-13. Plaintiff states

that "[t]his is the main informal complaint turned in by [Plaintiff] to the grievance officer" and that "[t]his grievance was under [his] door when [he] woke up the next morning." *Id.* at 10.

While it appears that Plaintiff may have filed an "Informal Complaint" (form CD-150501.3) in connection with the September 11, 2007, incident, the undisputed evidence before the Court shows that Plaintiff did not file an "Inmate Grievance" (form CD-150501.1) at any time, nor did he complete the grievance process through the Department level appeal, as required by the Corrections Department's grievance policy (Policy CD-150500). As stated above, "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan*, 304 F.3d at 1032; *see also Yousef v. Reno*, 254 F.3d 1214, 1221-22 (10th Cir. 2001) (finding that filing an informal complaint does not satisfy the exhaustion requirement). The Court, therefore, finds that Plaintiff failed to exhaust his administrative remedies.

In regards to Plaintiff's claim that he was unable to pursue his administrative remedies, unless a prisoner is completely barred from filing a grievance, actions by prison authorities that have the effect of frustrating the inmate's efforts to file a grievance will not excuse a failure to exhaust. *See Yousef*, 254 at 1221-22 (explaining that the Bureau of Prisons' statement that it had no jurisdiction to review determinations made in the Administrative Remedy Program with regard to the overall legality of certain administrative measures may have misled the plaintiff into thinking he had no remedy to pursue in his individual complaint, but this did not justify his failure to exhaust administrative remedies). Plaintiff seems to have had adequate access to the necessary paperwork and the ability to file and pursue grievances as demonstrated by: (1) the nine complaints Plaintiff states he filed with the Corrections Department (*see **Response (Doc. 30)*** at 9-40); (2) the four grievances Plaintiff filed in 2007 and 2008 (*see **Memorandum in Support (Doc. 25-2)*** at 2, and

*Martinez Report (Doc. 24)* Exhibits 4A, 4B, 4C, and 4D at 40-74); and (3) evidence that Plaintiff pursued three of those grievances through the Department-level appeal (*see Martinez Report (Doc. 24)* Exhibits 4A at 40, 4B at 47, and 4C at 69).

### *Conclusion*

In conclusion, even after accepting as true Plaintiff's allegations and drawing all reasonable inferences in favor of Plaintiff, the undersigned agrees with Defendants that Plaintiff failed to exhaust his administrative remedies. It appears from the record that Plaintiff may have waited too long to file a grievance and that the administrative review process is no longer available to him. The Court will not make this determination, however, but recommends dismissal of the case without prejudice to give Plaintiff an opportunity to pursue whatever remedies may be available to him. If he has indeed lost his chance for administrative review through his own default, his failure to exhaust is not thereby excused, and any further litigation based on this incident may well be dismissed with prejudice. Since the Court recommends dismissal of Plaintiff's claims for failure to exhaust administrative remedies, the Court does not reach, nor does it make a recommendation regarding, Defendants' remaining defenses.

### **RECOMMENDED DISPOSITION**

For the foregoing reasons, the Court recommends that *Defendants' Motion to Dismiss (Doc. 25)* be **GRANTED** and that all of Plaintiff's claims and this case be **DISMISSED without prejudice**.

**HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**